IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| In re: <br><br> 2B Farms, a Texas General Partnership, <br><br>     Debtor. | Case No. 23-50096-rlj12 |
| In re: <br><br> Terry M. Robinson and <br> Rebecca A. Robinson, <br>     Debtors. | Case No. 23-50097-rlj12 <br> (Jointly Administered Under <br> Case No. 23-50096-rlj12) |

**HTLF BANK'S OBJECTION TO PLAN AND MOTION TO ESTIMATE CLAIMS**

**I. INTRODUCTION**

Relying on Debtors' claim objection, the Plan entirely disregards the claims of HTLF, Debtors' largest creditor, and assumes that the Debtors are solvent. Debtors do not provide any contingencies to address HTLF's claims. Instead, Debtors simply assume that the Plan can be modified in the future. Rather than being a good faith effort to rehabilitate the Debtors, the Plan merely kicks the can down the road and should not be confirmed.

Moreover, to allow a realistic view of the Debtors' ability to effectively reorganize, HTLF Bank moves to estimate its claims for purposes of Plan confirmation only. Such estimation should be in an amount sufficient to make Debtors' liabilities greater than their assets, allowing payments under the Plan to reflect the Debtors' available assets. The payment allocation under any approved plan could then be rebalanced upon a final adjudication of disputed claims.

## II. MOTION TO ESTIMATE

The Bankruptcy Code gives the Court wide discretion to estimate claims, including discretion in the procedures for such estimation and the purposes for which such estimation is made. 11 U.S.C. 502(c). Here, due to the Debtors' objections to HTLF Bank's claims, the primary claims in the Debtors' bankruptcy are in a state of limbo. As a result, these claims are not included in the Plan put forward by the Debtors, and the Plan fails to accurately reflect the Debtors' financial situation. It is therefore necessary and appropriate for the Court to estimate HTLF Bank's claims for the limited purpose of conducting a liquidation analysis and judging the feasibility of the Plan.

Here, the claims asserted by HTLF Bank can be easily liquidated and do not require complex estimation procedures. HTLF Bank's claims are based on loan agreements and an overdraft on the Debtors' bank account, which are thoroughly documented in HTLF Bank's Proofs of Claim. HTLF Bank's claims total more than $8 million. Without HTLF Bank's claims, the Plan reports that the Debtors have almost $3 million in equity. With HTLF Bank's claims, the Debtors would have negative equity of approximately $5 million.

Until HTLF Bank's claims can be fully adjudicated, HTLF Bank moves that its claims be estimated at approximately 50% of their claimed value - $4 million – for purposes of preparing and evaluating a plan of reorganization.

The following table summarizes the assets and payments to be made under the Plan, adjusted to include HTLF Bank's claims both as claimed and as estimated:

|  | Per Plan | HTLF POCs | Estimated |
|---|---|---|---|
| Total Assets | $4,381,868.92 | $4,381,868.92 | $4,381,868.92 |
| Less Equity Value Exempt[1] | $650,396.22 | $650,396.22 |  |
| **Total Non-Exempt Equity** | **$3,731,472.70** | **$3,731,472.70** | **$650,396.22** |
|  |  |  | $3,731,472.70 |
| Less Total Liens | $263,292.77 | $1,829,642.77 | $170,276.35 |
| Less Attorney's Fees | $170,276.35 | $170,276.35 | $361,545.62 |
| Less Priority Claims | $361,545.62 | $361,545.62 | $1,829,642.77 |
| *Net Available for Unsecured Claims* | *$2,936,357.96* | *$1,370,007.96* | *$1,370,007.96* |
| *Unsecured Claims* | *$55,589.94* | *$6,625,419.53* | *$2,489,239.94* |
| Payments on Unsecured Claims | $55,589.94 | $1,370,007.96 | $1,370,007.96 |
| **Total Payments** | **$850,704.68** | **$3,731,472.70** | **$3,731,472.70** |

### III. OBJECTIONS TO CONFIRMATION OF DEBTORS' PLAN

Section 1225 provides that a court shall confirm a plan only if all of the requirements of §1225(a) are met, which are as follows:

1) Plan complies with the applicable provisions of title 11;

2) Any payments required to be made prior to confirmation have been paid;

3) Plan has been proposed in good faith and not by any means forbidden by law;

4) The value of property to be distributed on account of each allowed unsecured claim is not less than the amount that would be paid in a liquidation;

5) The holder of each allowed secured claim either (1) has accepted the plan; (2) will retain its lien and receive the value of its secured claim; or (3) will receive the collateral;

6) The debtor will be able to make all payments and comply with the plan; and

7) The debtor is current on domestic support obligations.

Here, and as set forth more fully below, Debtors' Plan fails to meet all of the requirements of §1225(a), in particular, paragraphs (1), (3), (4), (5), and (6).

---

[1] In its liquidation analysis, the Plan erroneously includes the value of the Ford F-350 (which has no reported equity) and the Mineral Interests (for which no exemption is claimed) in the column for exempt equity.

A. **Debtors do not Qualify as Family Farmers.**

To be a "family farmer" eligible for reorganization under Chapter 12, at least 50% of Debtors' debts must arise out of a farming operation owned or operated by the Debtors. 11 U.S.C. § 101(18). The majority of Debtors' liabilities arise not out of their own farming operations, but out of the purchase and sale of cattle (or, more likely, the purchase and sale of cattle contracts for which no cattle actually existed, which would be in the nature of a security), through the McClain Debtors.

Even assuming that Debtors were purchasing real cattle that were being fed by the McClain Debtors until sale, that operation was not one owned and operated by the Debtors. At most, Debtors were passive investors in someone else's "cattle" or "cattle securities" business. There is no indication that the Debtors participated in or owned the operation. Debtors purportedly purchased cattle, but did not select the cattle, manage or participate in their care, arrange for their sale, or make other substantive decisions for the operation. The Debtors were sending and receiving dollars, not engaging in a farming operation. Unlike the Debtors' own operations, the McClain Debtors' operations do not qualify for the eligibility analysis under Chapter 12.

More than 50% of the claims against the Debtors arise from their business with the McClain Debtors. As set forth in HTLF Bank's Proof of Claim and acknowledged by the Debtors in their Counterclaim, the majority of HTLF Banks' claim consists of an overdraft of over $5 million on Debtors' account. This overdraft arose from two checks from the McClain Debtors that were returned unpaid. The debt from this overdraft therefore arises out of the McClain Debtors' operations.

Because the majority of Debtors' liabilities arise out of the Debtors' passive investments in the McClain Debtors' operations, Debtors cannot satisfy the 50% test and do not qualify as family

farmers. As a result, the Plan—which is proposed under Chapter 12—cannot be confirmed and the bankruptcy should be converted to an appropriate Chapter.

### B. **Debtors' Plan Improperly Substantively Consolidates the Bankruptcies.**

11 U.S.C. §105(a) has been interpreted to allow the Bankruptcy Court to substantively consolidate debtors in appropriate circumstances. *See In re Amco Ins.,* 444 F.3d 690, 697 n.5 (5th Cir. 2006). Those circumstances have not been pled or established in the Debtors' bankruptcy cases. While the cases have been ordered to be administered jointly, they have not been substantively consolidated. *See* Doc. 12.

Here, the Debtors' Plan effectively and improperly substantively consolidates the bankruptcy estates of all of the Debtors. The Plan pulls all creditors into one pool and attempts to pay them out of the assets of all Debtors. However, the Debtors' bankruptcy estates have not been substantively consolidated. Each Debtor is separate and apart from the other.

This improper consolidation is likely to have practical effects on the amount that unsecured creditors of each Debtor are entitled to receive. Notably, HTLF Bank received commercial guarantees from the individual Debtors, guaranteeing all debt that might be owed by 2B Farms to HTLF Bank. As a result, HTLF Bank's claims could be satisfied either out of the assets to 2B Farms or the assets of the individual Debtors. In contrast, other creditors without such a guarantee may be limited to recovering from a single pool of assets.

As a result, this unauthorized substantive consolidation defeats the purpose of the Bankruptcy Code by potentially paying the creditors of one debtor out of the assets of a separate debtor. The Plan's failure to keep the Debtors and their assets separate therefore violates §1225(a)(1) and (3) and should not be confirmed.

### C. The Plan's failure to address contingencies for HTLF Bank's claims demonstrates a lack of good faith.

Section 1225(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). Applying the good faith requirement in a chapter 13 plan, the Fifth Circuit Court of Appeals has held that the Bankruptcy Court looks at the "totality of the circumstances," including:

> "(1) the reasonableness of the proposed repayment plan,
>
> (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code,
>
> (3) whether the debtor genuinely intends to effectuate the plan
>
> (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities
>
> (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay
>
> (6) whether the plan reflects the debtor's ability to pay, and
>
> (7) whether a creditor has objected to the plan."

*In re Stanley*, 224 F. App'x 343, 346 (5th Cir. 2007) (internal quotations omitted).

From a practical perspective, Debtors' entire restructuring hinges on whether HTLF Bank's claims are allowed or disallowed. As summarized above, if HTLF Bank's claims are ignored, Debtors are entirely solvent. In contrast, if HTLF Claims are included, Debtors are insolvent. The Plan does not propose estimation of HTLF Bank's claims or describe any reserve to address these claims in the future. Instead, the Debtors have essentially omitted the very claims that precipitated their bankruptcy filings.

Without including contingencies addressing HTLF Bank's claim, the Plan is essentially a placeholder with no realistic chance of being implemented. If HTLF Bank's claims are ultimately

disallowed, then Debtors are fully solvent and have no need for a bankruptcy plan. If, on the other hand, HTLF Bank's claims are allowed, then the Plan would need to be almost entirely re-written to account for that substantial claim. The Debtors have not accounted for either eventuality.

Instead of attempting to address the claims that were the basis for the Debtors' bankruptcy, the Plan appears to be a mere placeholder which has essentially no chance of being implemented. As a result, the Debtor's Plan should not be confirmed.

### D. **Debtors' Plan Does Not Provide More than what HTLF Bank would receive in a liquidation.**

To be confirmable, the Plan must provide for unsecured creditors to receive at least the value they would have received in a liquidation. Where, as here, the Plan provides for secured creditors to retain their liens, the secured creditor must similarly receive the value it would have received if its collateral was liquidated. The Plan fails to provide more value to HTLF Bank, or other unsecured creditors, than they would receive in a liquidation.

If HTLF Bank's claims are estimated at $4 million as requested above, HTLF Bank would have a secured debt of $1,566,350 (based on the reported value of its collateral) and an unsecured debt of $2,433,650. Based on the values and priority claims reported in the Plan, $1,370,007 would be available for unsecured creditors in the event of a liquidation, of which HTLF would receive the vast majority. The Plan currently provides for no payments to HTLF Bank and should not be confirmed.

Further, a liquidation would provide immediate value to HTLF Bank and other creditors. To provide creditors with the value they would have received in a liquidation, the Plan must provide for interest as compensation for the time value of money. *See Matter of Johnson*, 8 B.R. 503, 505 (Bankr. S.D. Tex. 1981). This is especially true in the current Plan, where despite Debtors purportedly being solvent, the Plan fails to provide any interest for the $55,589.94 in unsecured

claims. The Plan fails to provide creditors with more than they would receive in a liquidation and should not be confirmed.

### E. Debtors' Plan Is Not Feasible.

Section 1225(a)(6) requires that a plan proponent show that "the debtor will be able to make all payments under the plan and to comply with the plan," i.e., that the plan is feasible. 11 U.S.C. §1225(a)(6). Failure to prove feasibility prevents the court from confirming a debtor's plan. The Debtors claim that the Plan can be modified to provide for HTLF Bank's claims upon their eventual adjudication, but the Plan fails to establish that such modification could be feasible.

As described in the prior section, if HTLF Bank's claims are estimated or eventually adjudicated at an amount that makes Debtors truly insolvent, the payments to be made under the Plan would need to increase from $850,704.68 to $3,731,472.70 (plus interest) to be confirmable. That is a difference of over $2,880,768.02. Even without interest, that would require additional payments of $576,153.60 per year for 5 years.

The Debtors report available income of only $338,483.53 per year, which is further reduced by the already-proposed payments. The Plan does not describe any methods of providing additional income if necessary. Therefore, the Debtors have failed to show that the Plan is feasible.

### IV. CONCLUSION

Debtors' Plan is not confirmable as it fails to meet the requirements of Section 1225 of the Bankruptcy Code, as set forth above. Rather than providing for Debtors' liabilities and setting forth a viable path to reorganization, the Plan is essentially an incomplete placeholder. As a result, the Plan fails to accomplish the purposes of the Bankruptcy Code and should not be confirmed.

HTLF Bank reserves the right to modify, supplement, or amend this Objection with further any further objections discovered before or at the time of the confirmation hearing.

WHEREFORE, HTLF Bank respectfully prays that the Court deny confirmation of the Debtors' Plan and that the Court grant such other and further relief the Court deems just and appropriate, in law or in equity, under the circumstances.

Dated this 11th day of October, 2023.

> Respectfully Submitted,
>
> LOVELL ISERN & FARABOUGH, LLP
> John H. Lovell, SBN 12609300
> john@lovell-law.net
> Matthew S. Merriott, SBN 24100843
> matthew@lovell-law.net
> 112 SW 8th Avenue, Suite 1000
> Amarillo, Texas 79101-2314
> Telephone:    (806) 373-1515
> Facsimile:    (806) 379-7176
>
> By:    /s/ Matthew S. Merriott
>        Matthew S. Merriott
>
> *Attorneys for Creditor, HTLF Bank*

### Certificate of Service

The undersigned hereby certifies that on October 11, 2023, a true and correct copy of the foregoing HTLF Bank's Objection to Plan and Motion to Estimate Claims was served on counsel of record, via the Court's electronica filing service.

/s/ Matthew S. Merriott