

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 15, 2023**

**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| IN RE: | * |
| 2B Farms, a Texas General Partnership | * CASE NUMBER:   23-50096-RLJ-12 |
| Debtor | |
| Terry M. Robinson and Rebecca A. Robinson | * CASE NUMBER:   23-50097-RLJ-12 |
| Debtors | (Jointly Administered Under Case No 23-50096-RLJ-12) |

**ORDER CONFIRMING**
**DEBTORS' AMENDED JOINT CHAPTER 12 PLAN OF REORGANIZATION**

The Court having heard the Debtor's(s') Plan (or Amended/Modified Plan) of Reorganization dated November 10, 2023 at the hearing held December 13, 2023 at 1:30pm.

It having been determined after hearing on notice that:

1. The Plan complies with the provisions of Chapter 12 of the Bankruptcy Code; and

2. Any fee, charge or amount required under Chapter 123 of Title 28, or by the Plan, to be paid before Confirmation, has been paid; and

3. The Plan has been proposed in good faith and not by any means forbidden by law; and

4. The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor(s) was liquidated under Chapter 7 of the Bankruptcy Code on such date; and

5. With respect to each allowed secured claim provided for by the Plan, the Plan provides that the holder of such claim retain the lien securing such claim and the value, as of the effective date of the Plan, of property to be distributed by the Trustee or the Debtor(s), under the Plan, on account that such claim is not less than the allowed amount of such claim, or the Debtor(s) surrenders the property securing such claim to such holder; and

6. All payments made or promised by the Debtor(s) or by a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the case, have been fully disclosed to the Court and are reasonable, or if to be fixed after confirmation of the Plan, will be subject to the approval of the Court; and

7. The debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and

8. The Debtor(s) will be able to make all payments under the Plan and to comply in all respects with

**IT IS THEREFORE ORDERED:**                                                                                   Page 2

1(A).  PAYMENTS TO THE TRUSTEE BY THE DEBTOR:  The Debtor is hereby Ordered to pay to the
Chapter 12 Trustee, the following amounts on or before the following dates:

| Year | January | February | March | April | May | June |
|------|---------|----------|-------|-------|-----|------|
| 2024 | $77,236.21 | $0.00 | $36,750.03 | $0.00 | $16,666.67 | $20,083.36 |
|      | July | August | September | October | November | December |
|      | $16,666.67 | $0.00 | $36,750.03 | $0.00 | $16,666.67 | $20,083.36 |
| Year | January | February | March | April | May | June |
| 2025 | $60,258.34 | $0.00 | $36,750.03 | $0.00 | $0.00 | $36,750.03 |
|      | July | August | September | October | November | December |
|      | $0.00 | $0.00 | $36,750.03 | $0.00 | $0.00 | $36,750.03 |
| Year | January | February | March | April | May | June |
| 2026 | $56,057.23 | $0.00 | $34,097.97 | $0.00 | $0.00 | $18,634.05 |
|      | July | August | September | October | November | December |
|      | $0.00 | $0.00 | $18,634.05 | $19,659.36 | $0.00 | $18,634.05 |
| Year | January | February | March | April | May | June |
| 2027 | $55,909.81 | $0.00 | $18,634.05 | $0.00 | $0.00 | $18,634.05 |
|      | July | August | September | October | November | December |
|      | $0.00 | $0.00 | $18,634.05 | $0.00 | $0.00 | $18,634.05 |
| Year | January | February | March | April | May | June |
| 2028 | $55,909.81 | $0.00 | $18,634.05 | $0.00 | $0.00 | $18,634.05 |
|      | July | August | September | October | November | December |
|      | $0.00 | $0.00 | $18,634.05 | $0.00 | $0.00 | $18,634.05 |

1(B).  Amounts to pay pursuant  pursuant to 11 U.S.C.  Section 1225(a)(4) and projected disposable income are
set out in Other Plan Provisions and the Plan Addendum attached and made a part of this order.  The plan term is
5 years.

PAYMENTS UNDER THE PLAN                                                                 Page 3

2.  STANDING CHAPTER 12 TRUSTEE'S FEE:  The Trustee shall  be paid in full pursuant to
11 U.S.C. Section 503(b), 1226(b)(2), and 28 U.S.C. Section 586(e)(1)(B).

3.  DEBTOR ATTORNEY:  Debtor's attorney is named below and will be paid by the Trustee as follows:

| Attorney | Total Fee | Amount Paid | Unpaid Balance | # Pmts | C D* | Payment Amount | Trustee Fee | 1st Date |
|---|---|---|---|---|---|---|---|---|
| McWhorter, Cobb & Johnson, LLP | 250000.00 | 60930.42 | 189069.58 | 11 | | See below | 0.00 | |
| 1 Payment of $20,000 beginning 1/29/2024 then; | | | | | | | 0.00 | 0.00 |
| 5 Payments every two months of $15,000 beginning 3/29/2024 then; | | | | | | | 0.00 | 0.00 |
| 5 Payments quarterly of $15,000 beginning 3/29/2025 and 1 payment of $19,069.58 10/29/2026 | | | | | | | | |

4.  APPRAISER OR CONSULTANT FEES:  Appraisers or Consultants employed by the Debtor, are
listed below, and will be paid by the Trustee as follows:

| Appraiser/ Consultant | Total Fee | Amount Paid | Unpaid Balance | # Pmts | C D* | Payment Amount | Trustee Fee | 1st Date |
|---|---|---|---|---|---|---|---|---|
| | | | 0.00 | | | 0.00 | 0.00 | |
| | | | 0.00 | | | 0.00 | 0.00 | |
| | | | 0.00 | | | 0.00 | 0.00 | |
| | | | 0.00 | | | 0.00 | 0.00 | |
| | | | 0.00 | | | 0.00 | 0.00 | |

5.  PRIORITY CLAIMS:
The following claims shall be paid by the Trustee, in full, at the rate stated in the following amounts,
on the following date(s)

| Creditor Name | Claim Amount | # Pmts | C D* | Payment Amount | Trustee Fee | 1st Date |
|---|---|---|---|---|---|---|
| Internal Revenue Service | 361500.51 | 20 | 4 | 18075.03 | 2008.33 | 3/29/2024 |
| (See additional treatment in plan addendum, paragraph #6) | | | | 0.00 | 0.00 | |
| | | | | 0.00 | 0.00 | |
| Internal Revenue Service | 45.11 | 1 | 1 | 45.11 | 5.01 | 1/29/2024 |
| | | | | 0.00 | 0.00 | |
| | | | | 0.00 | 0.00 | |
| | | | | 0.00 | 0.00 | |

     To the extent a priority claim not provided for above is allowed by the Court, (or deemed allowed  per
11 USC 502(a) by virtue of having been filed and not objected to) or is for a greater amount than that above
provided, the Trustee will pay such claim or additional amount, in full, during the term of the Plan, unless
otherwise provided by modification hereof.

* CD = 1 ANNUAL, 2 SEMI-ANNUAL, 4 QUARTERLY, 12 MONTHLY

Page 4

6.  SECURED CLAIMS:

Disbursements by the Trustee on impaired claims, including arrearages; direct payments by Debtor(s);  surrender of collateral for value:  The Trustee and/or the Debtor(s) as indicated, shall pay the following secured claims, the amount stated on or before the  dates shown; or Debtor(s) will surrender the collateral for the values shown:

| Creditor Name | HTLF Bank Clm # 6, 7 & 9 | HTLF Bank Clm # 8 | | |
|---|---|---|---|---|
| Collateral Description | 2B Equip & cattle 2014 JD 8370R Disputes claim subject to offsets | CAT 938 Wheel Loader (Sold prior to confirmation) | | |
| Creditor's Claim Amount | 8,136,179.59 | 61,801.30 | | |
| * Equity Value: Secured | 1,566,350.00 | 61,801.30 | | |
| Deficiency: Unsecured Claim | 6,569,829.59 | 0.00 | 0.00 | 0.00 |
| Amortization Term | See treatment in | | | |
| Interest Rate | Other Plan Provisions | | | |
| Interest Start Date | and the Plan | | | |
| Date First Pmt by Trustee | Addendum attached | | | |
| # Payments by Trustee | and made a part of | | | |
| Payment Code | this Order. | | | |
| Equal Amort Code = Y | | | | |
| Days to First Pmt | | | | |
| Adj. Int. days First Pay | | | | |
| Adj Int. Amt. First Pay | | | | |
| **First Payment by Trustee** | | | | |
| Principal & Interest | | | | |
| Interest Adjustment | | | | |
| Trustee Fee | | | | |
| Total Pmt + T. Fee | | | | |
| **Other Payments by Trustee** | | | | |
| Principal & Interest | | | | |
| Trustee Fee | | | | |
| Total Pmt + T. Fee | | | | |
| **Other Payments by Debtor** | | | | |
| # Payments by Debtor after completion of plan | | | | |
| Payment Amount by Debtor | | | | |
| Date First Pmt by Debtor | | | | |
| Remarks | Claims reduced by $98,198.70 per Doc #61 | Claim withdrawn 12/7/2023 | | |

*  If collateral is subject to senior lien(s), only the value (equity)  in excess of same is shown.

Page 5

## 6. SECURED CLAIMS: (Continued)

Disbursements by the Trustee on impaired claims, including arrearages; direct payments by Debtor(s);  surrender of collateral for value:  The Trustee and/or the Debtor(s) as indicated, shall pay the following secured claims, the amount stated on or before the  dates shown; or Debtor(s) will surrender the collateral for the values shown:

| Creditor Name | John Deere (Claim #4) | John Deere (Claim #5) | First Financial Bank (Claim #3) | Farm Credit Services (Claim #10) |
|---|---|---|---|---|
| Collateral Description | 2014 JD 8370R Tractor | 2016 Great Plains 4000 Drill | 2020 Ford F350 Crew Cab Pickup | JD 2210 Field Cultivator |
| Creditor's Claim Amount | 90,028.33 | 22,177.50 | 71,510.44 | 30,068.55 |
| * Equity Value: Secured | 90,028.33 | 22,177.50 | 71,510.44 | 30,068.55 |
| Deficiency: Unsecured Claim | 0.00 | 0.00 | 0.00 | 0.00 |
| Amortization Term | 5 | 5 | 5 | 5 |
| Interest Rate | 6.00% | 6.00% | 6.00% | 6.00% |
| Interest Start Date | 6/1/2023 | 6/1/2023 | 6/1/2023 | 6/1/2023 |
| Date First Pmt by Trustee | 1/29/2024 | 1/29/2024 | 1/29/2024 | 1/29/2024 |
| # Payments by Trustee | 5 | 5 | 5 | 5 |
| Payment Code | 1 | 1 | 1 | 1 |
| Equal Amort Code = Y | N | N | N | N |
| Days to First Pmt | 242 | 242 | 242 | 242 |
| Adj. Int. days First Pay | 123 | 123 | 123 | 123 |
| Adj Int. Amt. First Pay | $1,820.30 | $448.41 | $1,445.88 | $607.96 |
| **First Payment by Trustee** | | | | |
| Principal & Interest | $21,372.40 | $5,264.86 | $16,976.32 | $7,138.17 |
| Interest Adjustment | ($1,820.30) | ($448.41) | ($1,445.88) | ($607.96) |
| Trustee Fee | $2,172.45 | $535.16 | $1,725.60 | $725.58 |
| Total Pmt + T. Fee | $21,724.55 | $5,351.61 | $17,256.04 | $7,255.79 |
| **Other Payments by Trustee** | | | | |
| Principal & Interest | $21,372.40 | $5,264.86 | $16,976.32 | $7,138.17 |
| Trustee Fee | $2,374.71 | $584.98 | $1,886.26 | $793.13 |
| Total Pmt + T. Fee | $23,747.11 | $5,849.84 | $18,862.58 | $7,931.30 |
| **Other Payments by Debtor** | | | | |
| # Payments by Debtor after completion of plan | 0 | 0 | 0 | 0 |
| Payment Amount by Debtor | $0.00 | $0.00 | $0.00 | $0.00 |
| Date First Pmt by Debtor | | | | |

Remarks

Includes $5000 in Attorney Fees

*  If collateral is subject to senior lien(s), only the value (equity)  in excess of same is shown.

Page 6

6.  SECURED CLAIMS:  (Continued)

Disbursements by the Trustee on impaired claims, including arrearages; direct payments by Debtor(s);  surrender of collateral for value:  The Trustee and/or the Debtor(s) as indicated, shall pay the following secured claims, the amount stated on or before the  dates shown; or Debtor(s) will surrender the collateral for the values shown:

| Creditor Name | Vermeer Credit Corp (Claim #11) | Scurry County Tax (Claim #2) | | |
|---|---|---|---|---|
| Collateral Description | Vermeer Hay Rake | 2023 Real Estate Taxes | | |
| Creditor's Claim Amount | 4,513.00 | 8,685.30 | | |
| * Equity Value: Secured | 4,513.00 | 8,685.30 | | |
| Deficiency: Unsecured Claim | 0.00 | 0.00 | 0.00 | 0.00 |
| Amortization Term | 5 | 5 | | |
| Interest Rate | 6.00% | 12.00% | | |
| Interest Start Date | 6/1/2023 | 6/1/2023 | | |
| Date First Pmt by Trustee | 1/29/2024 | 1/29/2024 | | |
| # Payments by Trustee | 5 | 5 | | |
| Payment Code | 1 | 1 | | |
| Equal Amort Code = Y | N | N | N | N |
| Days to First Pmt | 242 | 242 | 0 | 0 |
| Adj. Int. days First Pay | 123 | 123 | 0 | 0 |
| Adj Int. Amt. First Pay | $91.25 | $351.22 | $0.00 | $0.00 |
| **First Payment by Trustee** | | | | |
| Principal & Interest | $1,071.37 | $2,409.39 | $0.00 | $0.00 |
| Interest Adjustment | ($91.25) | ($351.22) | $0.00 | $0.00 |
| Trustee Fee | $108.90 | $228.69 | $0.00 | $0.00 |
| Total Pmt + T. Fee | $1,089.02 | $2,286.86 | $0.00 | $0.00 |
| **Other Payments by Trustee** | | | | |
| Principal & Interest | $1,071.37 | $2,409.39 | $0.00 | $0.00 |
| Trustee Fee | $119.04 | $267.71 | $0.00 | $0.00 |
| Total Pmt + T. Fee | $1,190.41 | $2,677.10 | $0.00 | $0.00 |
| **Other Payments by Debtor** | | | | |
| # Payments by Debtor after completion of plan | 0 | 0 | 0 | 0 |
| Payment Amount by Debtor | $0.00 | $0.00 | $0.00 | $0.00 |
| Date First Pmt by Debtor | | | | |
| Surrender Date | | | | |
| Remarks | | | | |

*  If collateral is subject to senior lien(s), only the value (equity)  in excess of same is shown.

Page 7

7.  UNSECURED CLAIMS:

A.  Unsecured Claims Classified For Special Treatment:  The Trustee shall pay the following unsecured
   claims the following amount(s) including interest at the following rate(s), at the following  times
   pursuant to 11 U.S.C. Section 1222(11).

| Creditor Name | Reason | Claim Amount | Interest Rate | # Pmts | C D* | Amount Disb. | Trustee Fee | 1st Date |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | $0.00 | |

B.  General Unsecured Deficiency Creditors:  The following claims shall be paid by the Trustee, pro-rata,
   out of any "Projected Disposable Income" received in paragraph 1(B) of this Order.

| Creditor | Claim Amount | Percentage |
|---|---|---|

* CD = 1 Annual, 2 Semi-Annual, 4 Quarterly, 12 MONTHLY

Page 8

C. **General Unsecured Creditors:**  The following claims shall be paid by the Trustee, pro-rata with the claims in paragraph 8(B), out of any "Projected Disposable Income" received in paragraph 1(B) of this Order.  See additional treatment in plan addendum paragraph #5.

| Claim # | Creditor Name | Claim Amount | Percentage |
|---|---|---|---|
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | Unsecured claims filed in 23-50097 | | 0.0000% |
| 1 | AgriSompo North America | 35514.82 | 53.2248% |
| 14 | Discover | 1412.81 | 2.1173% |
| 30 | John Deere Financial | 14021.68 | 21.0138% |
| 3 | Internal Revenue Service - Penalties | 4037.57 | 6.0510% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | Unsecured claims filed in 23-50096 | | 0.0000% |
| 1 | AgriSompo North America - Duplicate of claim listed above | | 0.0000% |
| 10 | Internal Revenue Service - Penalties | 557.95 | 0.8362% |
| 3 | Kubota Credit Corp (per Doc #109) | 11181.23 | 16.7569% |
| | | | 0.0000% |
| | Unknown/Disputed Claims | | 0.0000% |
| | | | 0.0000% |
| 9 | HTLF Bank (pending adversary)-Disputed | Unknown | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | | | 0.0000% |
| | Total | $66,726.06 | 100.0000% |

Page 9

## 8.  OTHER PLAN PROVISIONS:

See Additional Plan Provisions attached as Plan Addendum and made a part of this Order.

## 9.  PARTICIPATION IN FEDERAL FARM PROGRAMS

If the debtor is a party to prepetition, executory contracts with the Commodity Credit Corporation (CCC) or any other agency of the United States Department of Agriculture (USDA) evidencing debtor's participation in Federal Farm Programs, the confirmation of the debtor's plan shall constitute Court approval of and authorization for debtor's assumption of such contract(s).

Confirmation of the debtor's plan shall also constitute Court permission and authorization for the debtor to enroll and participate in Federal Farm Programs administered by the USDA or any agency thereof.

Nothing contained in this Order shall impair the policies, procedures, regulations and contract provisions established by the USDA or any of its agencies with regard to the Federal Farm Program benefits including, but not limited to, determining eligibility for program participation and for program benefits and collecting postpetition claims of the United States Government by offset.

All postpetition crops are free and clear of any prepetition liens or security interests unless such prepetition liens or security interests are retained in the confirmed plan. Prepetition liens and security interests which are not retained in the confirmed plan shall be released by the holder(s) of such liens or security interests on request (oral or written) by the debtor.

Debtor may place any of the debtor's postpetition crops in the Federal Price Support Loan Program without further order of this Court and upon compliance with requirements of the Program.  All Federal Farm Program benefits that the FSA has determined to be payable to debtor may be disbursed by FSA in the ordinary course of business in accordance with the program regulations and without further order of this Court.

10. 'PENALTY' UNSECURED CLAIMS:  Any unsecured claims for non-pecuniary penalty, expressly including IRS penalty to date of petition on unsecured and/or priority claims shall be paid pro-rata any funds remaining after all other unsecured claims have been paid in full.

11. GRACE PERIOD:  The Trustee may, for "good cause" allow the Debtor a grace period of up to forty-five (45) days for any quarterly, semi-annual or annual payment due to the Trustee under the Plan, provided Debtor also pays all applicable accrued interest and Trustee's fee resulting from such late payment.

12. DISCHARGE:  Pursuant to Section 1228 of the bankruptcy Code, as amended, the Debtor shall receive a discharge after completion of all payments under the plan.

13. MODIFICATION:  Pursuant to Section 1229 of the Bankruptcy Code, as amended, the Debtor shall have the right to modify the plan after confirmation.

14. LIEN RETENTION:  Pursuant to Section 1225(a)(5) of the Bankruptcy Code, as amended, secured creditors shall retain their liens.


IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Debtor's Chapter 12 Plan of Reorganization be and the same is hereby approved


IT IS FURTHER ORDERED that any subsequent Modification of such Plan and the Order confirming or modifying such plan, will conform substantially to the form hereof.

# # # END OF ORDER # # #
APPROVED AS TO FORM AND SUBSTANCE:


/s/ Todd J. Johnston                               /s/ Michael S. Uryasz
Todd J. Johnston                                   Michael S. Uryasz
Attorney for the Debtor(s)                         Attorney for Farm Credit Services of
                                                   America, PCA d/b/a AgDirect


/s/ Brad Kloiber                                   /s/ Matthew S. Merriott
Brad Kloiber                                       Matthew S. Merriott
Standing Chapter 12 Trustee                        Attorney for HTFL Bank
Prepared : 12/14/2023

## <u>Plan Addendum</u>

**9. Additional Plan Provisions**

1)      <u>**Cattle Proceeds in MCJ's Client Trust Account**</u>: There is approximately $270,000.00 currently held or in the process of being delivered to the client trust account of McWhorter, Cobb & Johnson, LLP pursuant to the Court's *Orders Authorizing Sale of Certain Property of the Estate (Cattle) Pursuant to 11 U.S.C. § 363* entered on October 2, 2023 and November 30, 2023, respectively. These funds will be turned over to the Chapter 12 Trustee to the extent necessary to make the Debtors' Plan payments called for in the Plan. The balance of the funds will be turned over to the Debtors' debtor-in-possession account to pay expenses of the Debtors as budgeted in the Plan's 2024 cash flow projections.

2)      <u>**Incorporation of the Court's Prior Order as to Kent Ries, Chapter 7 Trustee for the McClain Entity Cases, and Rabo AgriFinance, LLC**</u>: Incorporated into this Plan as if fully set forth herein is the Order entered by the Court on October 27, 2023 [Dkt. # 99], which, among other things, extended the deadline for the McClain Entity Chapter 7 Trustee and/or Rabo AgriFinance, LLC to file Proofs of Claim and/or amended Proofs of Claim and for the filing of any complaints objecting to the discharge of any of the Debtors to February 10, 2024.

3)      <u>**HTLF Bank Contested Claim**</u>:      HTLF Bank, successor to First Bank & Trust, and Debtors 2B Farms, Terry Robinson and Rebecca Robinson have asserted claims and counterclaims against each other in Adversary Case No. 23-05002-rlj and Adversary Case No. 23-05003-rlj, which matters are currently pending before the Bankruptcy Court under consolidated Adversary Case No. 23-05002-rlj. HTLF Bank filed its proofs of claim concerning Debtor 2B Farms on July 12, 2023. These are identified as Claim Numbers 6, 7 and 9 on the Court's Claims Register in bankruptcy case # 23-50096-rlj12. HTLF Bank also filed nearly identical proofs of claim concerning Terry M. Robinson and Rebecca A. Robinson, on July 12, 2023. These are identified as Claim Numbers 6, 7 and 8 on the Court's Claims Register in bankruptcy case # 23-50097-rlj12. Debtors have objected to all of these proofs of claim and they have been consolidated for adjudication into the pending consolidated adversary proceeding.

HTLF Bank's claim, if any, is subject to certain offsets for both pre- and post-petition payments made by the Debtors to HTLF Bank and the Debtors reserve their right to assert these offsets against any allowed claim of the bank. In May 2023 and prior to the Debtors' petition date, the Debtors sold approximately 1128 head of cattle for a combined total amount of $1,590,730.89. Of these 1128 head of cattle sold, the proceeds of 589 head, involving cattle sale transactions of $326,872.58 (251 head) and 398,588.37 (338 head), totaling $725,460.95, are currently being held in separate escrow accounts with HTLF Bank under an agreement with Kent D. Ries, the Chapter 7 Bankruptcy Trustee for the McClain Entities ("Trustee") until such time as the Bankruptcy Court can consider and direct the ultimate disposition of these cattle proceeds pursuant to its Order. HTLF Bank therefore received the balance, or <u>$865,269.94</u>, immediately prior to the Debtors' petition date. In addition, the Debtors sold a loader pursuant to the Court's Order during the pendency of their bankruptcy cases, which funds totaling <u>$160,000.00</u> were also paid over to HTLF Bank, for a combined total of <u>$1,025,269.94</u> paid

to HTLF Bank both immediately prior to and during the pendency of these bankruptcy cases. The Debtors contend that these payments totaling $1,025,269.94 extinguished, or have nearly extinguished, all amounts owing by the Debtors to HTLF Bank, excluding the claims asserted by HTLF Bank in the above-referenced adversary cases which the Debtors dispute.

Notwithstanding the above, the Debtors will make adequate protection payments of $90,000.00 per year to HTLF Bank, beginning January 31, 2024, pending adjudication of the claims set forth in the above-referenced consolidated adversary proceeding.  These payments will first be applied to Loan XXXX1767 and then to Loan XXXX3968. The Debtors do not dispute that HTLF's Claims, to the extent they are allowed, are cross-collateralized. These payments by the Debtors to HTLF Bank are in the nature of a compromise between the parties while the pending litigation is decided and are not in any way an acknowledgement by the Debtors of any amounts owing to HTLF Bank, which they dispute, or waiver of Debtors' rights, defenses, counterclaims or interests against same. In that regard, Debtors also grant HTLF Bank continuing security interests in the cattle and equipment the Debtors held as of the Petition Date, plus any proceeds and any substitute collateral.  These liens granted to HTLF Bank do not extend to property or its proceeds purchased from post-petition financing through a 3rd party lender, which financing the Debtors may later secure upon Court approval, or to any 3rd party's cattle placed on the Debtors' pastures pursuant to a grazing lease agreement which the Debtors may enter into from time to time, including any agreement with Keeling Cattle Feeders for the pasturing and grazing of approximately 450 -500 head of Keeling Cattle Feeders' cattle.  The Debtors agree not to voluntarily encumber the Family Limited Partnership property or their other assets, but reserve the right to make a request to the Court to encumber at least a portion of such property as part of a 3rd party financing motion they may file.  The Debtors will place general liability insurance to protect against any potential claims that might arise out of their continued operations.

To the extent that the Bankruptcy Court finds, or an agreement is reached between HTLF Bank and the Debtors that HTLF Bank has an allowed claim against the Debtors that is approved by the Bankruptcy Court, the Debtors will then seek to modify this Joint Chapter 12 Plan of Reorganization to provide for the treatment of the allowed claim under this Plan in accordance with the provisions of the Bankruptcy Code.  Further, to the extent that the Bankruptcy Court finds that HTLF Bank does not have an allowed claim against the Debtors' estates, then any adequate protection payments made herein will be turned over to the Trustee of the Chapter 12 estates with the disposition of those funds in accordance with the terms of the Chapter 12 Plan or a modification thereof.

4)      **Additional Contested Claims**: In addition, Kent Ries, Chapter 7 Trustee for the McClain Debtors, Rabo AgriFinance, LLC, Mechanics Bank, Thorlakson Diamond T Feeders, LP and AgTexas Farm Credit Services/Ag Texas PCA have each filed proofs of claim in the Debtors' respective bankruptcy proceedings asserting unknown and/or unliquidated claim amounts.  The Debtors object and dispute the claims of these parties and reserve the right to contest any or all of these parties' claims.   To the extent that the Bankruptcy Court finds, or an agreement is reached between a particular claimant and the Debtors that a claimant has an allowed claim against the Debtors that is approved by the Bankruptcy Court, the Debtors will then seek to modify this Joint

Chapter 12 Plan of Reorganization to provide for the treatment of the allowed claim under this Plan in accordance with the provisions of the Bankruptcy Code.

5)      **Unsecured Creditor Claim Treatment**: All allowed general unsecured creditor claims identified on Page 11, Paragraph C of the Plan will be paid  pro-rata in one installment in year five (5) of the plan period at 0.00% interest on December 1, 2028.  Pursuant to 11 U.S.C. Section 1225(a)(4), Debtors must pay a minimum of $66,771.17 to their allowed general unsecured creditors out of $3,377,198.12 (subject to any offset of any secured claim of HTLF Bank that is subsequently allowed) in assets currently available to satisfy such claims. In the event that additional general unsecured claims are allowed, the plan will require modification to account for such claims. There are potential actions by and against the Debtors to determine the property of the estate. The issue of whether these claims may increase or decrease the eventual amount available to satisfy general unsecured creditors is reserved for later adjudication.

6)      **Provisions Related to IRS Priority Claims:** The IRS will receive payments of $18,075.03/quarter at 8% interest.   Payments will be made on March 31st, June 3rd, September 30th and December 31st of each year of the Plan with the first payment due March 31, 2024.   The primary IRS claim in this case is subject to any amended 2022 (or prior year) federal income tax return filed by the Debtors. The Debtors reserve all rights to dispute the IRS claim and seek modification of this Plan as to the amount and treatment of the IRS claim upon such amended filings of a return(s) with the IRS.

The Debtors shall remain current with all of their post-confirmation federal tax obligations, including making deposits and payments and filing all returns, during the period the Debtors are required to make payments under this Plan.  A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, as required by the Internal Revenue Code, shall be deemed a material default under the terms of the Plan.  The Debtors shall be allowed a fifteen-day grace period with respect to the timeliness of these obligations before being deemed a default of the Plan.  Said grace period shall not be applicable with respect to the Debtors being found liable for penalties and interest as determined by the Internal Revenue Code.

Failure on the part of Debtors to pay fully when due any payment required to be made in respect of the Plan. In the event of default, the Internal Revenue Service shall give written or telephonic notice to the Debtors and the Debtors shall have fifteen days from the notice date to cure or otherwise establish there has been no default.  In the event the default is not cured and due to the size and ongoing nature of the Internal Revenue Service's claim, the administrative collection powers and rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code.

7)      **Specific Reservation of Claims and Causes of Action of the Debtors**:

The Debtors reserve all rights to assert and/or to continue to assert all claims and causes of action they may have as of the Petition Date, including post-plan confirmation standing before the Bankruptcy Court to prosecute or defend the following:

- HTLF Bank, successor to First Bank & Trust (see paragraph #3 above and Adversary No. 23-05002-rlj and Adversary No. 23-05002-rlj currently pending before this Court).

- All claims and causes of action of the Debtors against the bankruptcy estates of McClain Feedyard, Inc., McClain Farms, Inc., and 7M Feeders, Inc. by and through Kent Ries, Chapter 7 Trustee for the McClain Debtors fraudulent cattle buy/sell scheme perpetrated by Brian McClain through these entities.

- All state and federal law and bankruptcy code specific claims and causes of action against Rabo AgriFinance, LLC, including, but not limited to, claims available to the Debtors through Chapter 5, Subchapter III of the Bankruptcy Code for turnover, preference and fraudulent transfer claims, among others, related to the fraudulent cattle buy/sell transactions through the McClain account(s) and Rabo AgriFinance, LLC's alleged knowledge, participation and/or negligence related to same. Debtors specifically retain the right to pursue the recovery from Rabo AgriFinance, LLC of three (3) wire transfers from the account(s) of McClain Feedyard, Inc., McClain Farms, Inc., and 7M Feeders, Inc. (collectively, the "McClain Entities") at Mechanics Bank totaling $7,458,956.92 on April 4, 5 and 6, 2023, as well as unnegotiated checks totaling $7,601,318.86.

- All state and federal law and bankruptcy code specific claims and causes of action Mechanics Bank including, but not limited to, claims available to the Debtors through Chapter 5, Subchapter III of the Bankruptcy Code for turnover, preference and fraudulent transfer claims, among others, related to the fraudulent cattle buy/sell transactions through the McClain account(s) and Mechanics Bank's alleged knowledge, participation and/or negligence related to same. Debtors specifically retain the right to pursue the recovery from Mechanics Bank of three (3) wire transfers from their account to the McClain Entities' account(s) at Mechanics Bank totaling $7,458,956.92 on April 4, 5 and 6, 2023, as well as unnegotiated checks totaling $7,601,318.86.

- All state and federal law and bankruptcy code specific claims and causes of action against Thorlakson Diamond T Feeders, LP and AgTexas Farm Credit Services/Ag Texas PCA.

- All state and federal law and bankruptcy code specific claims and causes of action against the Estate of Brian McClain.

8) **Farm Credit Services of America, PCA d/b/a AgDirect ("FCSA")**:

a.    Farm Credit Services of America, PCA d/b/a AgDirect ("FCSA") has one claim in the TERRY M. ROBINSON and REBECCA A. ROBINSON bankruptcy, that being: Account No. 7532 in the amount of $25,068.55. This claim is more fully set forth in FCSA's filed Proof of Claim in Cause No. 23-50097-rlj12 (Claim No. 10).

b.       FCSA has a purchase money security interest on equipment as more fully set forth in their Retail Installment Contract and Security Agreement, which is attached to FCSA's Proof of Claim (Claim No. 10). All claim(s) are cross-collateralized, if applicable. FCSA retains its security interest and lien in the equipment to secure its claim and all necessary UCC's have been filed.

c.       The claim of FCSA shall continue to be cross-collateralized and cross-defaulted, so that default in payment of any claim of FCSA shall be a default in the payment of all the claims of FCSA, if applicable.

d.       Debtors shall cause to be placed, maintain, and pay timely all required liability, flood, life, fire hazard, and comprehensive public liability insurance coverage as is currently in effect or required by law or by contract on all FCSA's collateralized equipment. Debtors shall provide copies of such insurance policies and evidence that each such insurance policy identifies FCSA as Loss Payee with respect to FCSA's collateral. In the event FCSA is required to acquire or force place insurance, Debtors shall reimburse FCSA for its costs.

e.       FCSA shall be paid its reasonable attorneys' fees and expenses incurred in the case pursuant to §506 of the Bankruptcy Code. The fees and expenses of FCSA shall be added as additional principal to FCSA's claim for Account No. 7532 and the annual payments under the plan for this account shall be re-amortized accordingly. The Parties agree that FCSA's attorney fees as of confirmation of the Plan are at least $5,000.00. The attorney fees shall be added to Account No. 7532 and paid out according to the Plan under the re-amortized payment schedule. Debtors shall also reimburse FCSA for any reasonable post-confirmation attorneys' fees or other expenses expended by FCSA for preservation of its collateral or collection of its indebtedness.

f.       In the event secured creditor Farm Credit Services of America, PCA d/b/a AgDirect ("FCSA") and/or any other secured or unsecured creditor of Debtors listed in the Plan, does not receive any payment by the dates set forth in the Plan and such payment is not received during the pendency of the Trustee's 45-day grace period as referenced in Paragraph 12 and/or Exhibit "B" of the Plan, or in the event Debtors convert to a Chapter 7, or if the Trustee does not allow Debtors a grace period under the Plan, the automatic stay of 11 U.S.C. §362 shall terminate as to FCSA without further recourse to this Court and FCSA shall be allowed to take any and all steps necessary to exercise any and all rights it may have in the equipment collateral described as follows and as referenced in this Plan:

(i) **Account 7532:** Equipment collateral being that John Deere, Model 2210, Field Cultivator with serial number 1N02210LVC0745914, and any attachments.

Cure payments to FCSA, in the event such payments are not made by the Trustee under the Plan, must be made by certified funds only and FCSA may charge Debtors $50 for any notice given pursuant to this Order.

g.       In the event the Debtors decide to sell, transfer, or assign any of their property, assets, or rights in the ordinary course of business as referenced in Exhibit "B" of the Plan, and to

the extent such sale, transfer, or assignment relates or pertains to FCSA's collateral as noted herein and under the Plan, the Debtors shall obtain written permission and approval from FCSA of no less than 30-days prior to any sale, transfer, assignment, or other disposition of the Collateral including obtaining written permission and approval from FCSA prior to deciding, accepting, or otherwise considering the adequacy of consideration of any such sale, transfer, or assignment. Permission and approval by FCSA under this section are in addition to any permissions and approvals required under the Plan, Trustee's Office, and the applicable provisions of the United States Bankruptcy Code. In the event FCSA does not give its permission and approval of the sale, transfer, assignment, or otherwise disposition of the Collateral, such permission and approval to be given at the sole and absolute discretion of FCSA, such sale, transfer, assignment, or other disposition shall not occur.

9)      **Statement Concerning Tax Consequences of the Plan:**

The provisions of the proposed Amended Joint Chapter 12 Plan of Reorganization of the Debtors provide for normal operating procedures and associated financial accounting. However, the Plan contemplates the sale of certain capital assets, and, therefore, there likely will be tax consequences as a result of the Plan. Therefore, it is contemplated that the provisions of the Bankruptcy Code relating to such tax claims shall be employed to treat the taxes generated by such liquidations as Unsecured Claims as set forth pursuant to the provisions of 11 U.S.C. Section 1232.

11 U.S.C. § 1232 provides in relevant pan:

(a)      [A]ny unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of a sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation-

(1) shall be treated as an unsecured claim arising before the date on which the petition is filed;
(2) shall not be entitled to priority under section 507;
(3) shall be provided for under a plan; and
(4) shall be discharged in accordance with section 1228.

Thus, to the extent necessary the Debtors will file their tax returns with the Internal Revenue Service in the manner described in section 1232(d) of the Bankruptcy Code which requires appropriate notice under the provisions of section 505(b)(1). Such provisions provide for the filing of the tax returns by the Debtors, notice of the filing to the IRS, and then establish a procedure for a prompt determination regarding the propriety of such re turns. In the event the Internal Revenue Service has not filed a proof of claim related to such return within 180 days after it receives notice then the Debtors or the Chapter 12 Trustee may file a proof of claim which may not then by amended by the Internal Revenue Service. The Bankruptcy Court will have jurisdiction to determine any disputes relating to the treatment of such taxes in accordance with the provisions of section 502 of the Bankruptcy Code.